# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-314 (TFH)** |
| **v.** | : | |
| | : | |
| **SHAWN BRADLEY WITZEMANN,** | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Shawn Bradley Witzemann ("Witzemann" or the "Defendant") to 30 days' imprisonment, 36 months' probation, 60 hours of community service, and $500 in restitution.

### I.      Introduction

Defendant Shawn Bradley Witzemann, a 40-year-old resident of Missouri, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Defendant Witzemann pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of 30 days' imprisonment followed by 36 months' probation is

---

[1] Although the Plea Agreement in this matter, filed on July 21, 2022, (ECF No. 40, ¶ 10) reflects a sum of more than $1.4 million dollars in damages to the U.S. Capitol, as of October 14, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

appropriate in this case because Witzemann (1) entered the United States Capitol Building through the Senate Wing Doors just six minutes after the initial breach after observing police officers who were protecting the Capitol firing tear gas at rioters; (2) remained in the Capitol Building for nearly an hour and twenty minutes, despite the obvious presence of police; (3) pleaded with a police officer to join the cause of the rioters; and (4) made  statements on social media following January 6, 2021 that show a lack of remorse for his actions and support for those who stormed the Capitol that day to disrupt the certification of the 2020 election.

The Court must also consider that Witzemann's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. As Judge Bates explained at the sentencing hearing in another January 6 case, "The defendant was an active participant in a mob assault on our core democratic values and our cherished institution. And that assault was intended by many and by the mob at large in general to interfere with an important democratic processes of this country. I cannot ignore that, cannot pull this misdemeanor out of that context." *United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17. Weitzmann's actions and those of his fellow rioters enabled the breach of the Capitol, threatened the lives of the police officers, legislators, and their staffs, and disrupted the certification vote for several hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, the facts of and circumstances of Witzemann's crime support a sentence of 30 days' imprisonment, 36 months' probation, 60 hours of community service, and $500 in restitution.

## II.      Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 41 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Witzemann's conduct and behavior on January 6.

### *Witzemann's Pre-January 6th and Social Media Statements*

In 2020-2021, Witzemann appeared on a near-daily basis on an Internet webcast, which was available at the Facebook page of The Armenian Council for Truth in Journalism.  In the weeks leading up to January 6, 2021, Witzemann made many comments that called into question the 2020 presidential election and addressed the need for action in Washington, D.C.  For example, on November 3, 2020, while referring to mail-in ballots, he falsely stated at least twice that ballots were being thrown away.  Additionally, on November 15, 2020, after the election, Witzemann claimed to be "100 percent . . . on board" with the participants in the Million MAGA March.  On November 18, 2020, he again reiterated his belief that "[t]here's absolutely nothing right about this election."  He believed that those "telling us that this election is legitimate, they don't go by their own rules.  That's how you know it's bullshit."

On December 16, 2020, Witzemann increased his rhetoric, stating, "This election was stolen. . . .  There is no 2024. . . .  I'm not waiting that long. . . .  [Trump] won this election.  If we let it slide this time, that is the end."  On December 20, 2020, while referring to an upcoming trip to Washington, D.C., Witzemann said, "True believers" and "people of action" believe the Constitution "is worth fighting for. . . .  The cops are going to have to make a choice."

*Defendant Witzemann's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Witzemann was in Washington, D.C. after travelling from his home at the time in New Mexico.  According to Witzemann, he arrived in Washington, D.C. on January 4, 2021 to attend a security briefing for the Sons of Liberty, a group from New Jersey that was there to support then-President Donald Trump.  During the evening of January 5, 2021, Witzemann attended a rally in Freedom Plaza where he livestreamed several speakers, including General Michael Flynn.  According to Witzemann, TikTok banned him from livestreaming video that evening.

In the morning of January 6, 2021, Witzemann attended the rally for then-President Trump.  At approximately 1:00 p.m., Witzemann started to walk towards the Capitol Building.  When he got to the Capitol Building, he could see that a large group of rioters had pushed their way towards the steps of the West Front of the building while Capitol Police fired tear gas to keep them back.  He then observed the rioters push towards the door of the Capitol Building.

Recordings from the U.S. Capitol's closed-circuit video ("CCV") system show that at approximately 2:13 p.m., rioters had breached the Senate Wing Doors by smashing and entering through the windows adjacent to the doors and then kicking the doors open from inside to allow more rioters to enter.  As shown in Image 1, below, just six minutes after that initial breach, at approximately 2:19 p.m., Witzemann, circled in red and wearing a Pittsburgh Pirates baseball cap, walked through the Senate Wing Doors and entered the Capitol Building.



Image 1: *Witzemann entering the Capitol Building through the Senate Wing Doors at 2:19 p.m.*

At this time, Witzemann would have heard the alarms, seen the broken windows, the shattered glass on the floor, and the chaos inside the building. Shortly after entering the Capitol Building, at approximately 2:28 p.m., Witzemann, along with several other rioters, approached two police officers who were trying to prevent the rioters from walking further down a hallway. Witzemann filmed this incident using his cell phone. In the video, filed with the Court as Government Video Exhibit 1 for sentencing, Witzemann can be heard saying to one of the officers, "Brother, stand with us."

As shown in the images below, between approximately 2:32 p.m. and 3:28 p.m., Witzemann trespassed through several sections of the Capitol Building, including the Small House Rotunda, the Rotunda, and Statuary Hall, using his cell phone to record video from inside the Capitol Building.



Image 2: *Witzemann and other rioters approach two officers.*



Image 3: *Witzemann in the Small House Rotunda at approximately 2:36 p.m.*



Image 4: *Witzemann enters the Rotunda at approximately 2:39 p.m.*



Image 5: *Witzemann walking through Statuary Hall at approximately 2:40 p.m.*



Image 6: *Witzemann returns to the Rotunda at approximately 3:00 p.m.*

As can been seen in Image 7, and as discussed further below, the video recorded by Witzemann in the Capitol Building was later posted to the Facebook page of The Armenian Council for Truth in Journalism, where Witzemann would discuss what he observed in a webcast.



Image 7: *Witzemann in the Rotunda recording video that would be posted to Facebook webcast.*

Shortly after 3:00 p.m., while Witzemann was still loitering in the Rotunda, dozens of Metropolitan Police Department ("MPD") officers, wearing riot gear, entered the Rotunda and tried to clear the rioters out of that room.  At approximately 3:05 p.m., several rioters confronted the MPD officers, and some physically assaulted the officers.  Witzemann remained in the Rotunda during this time.  As shown in Images 8, 9, 10, and 11, below, between approximately 3:24 p.m. and 3:26 p.m., Witzemann was part of the mob that the MPD had to contain and escort from the Rotunda.



Image 8: *Witzemann recording MPD officers in the Rotunda at approximately 3:24 p.m.*



Image 9: *Witzemann in the middle of the mob being contained by the MPD officers.*



Image 10: *Witzemann recording MPD officers in the Rotunda at approximately 3:26 p.m.*



Image 11: *Witzemann continuing to record as he exits the Rotunda at approximately 3:26 p.m.*

At approximately 3:38 p.m., Witzemann exited the Capitol Building through the Memorial Doors, and continued to use his cell phone to record video that would later be posted to a webcast on Facebook.  He was inside the Capitol Building for nearly 80 minutes.



Image 12: *Witzemann exiting the Capitol Building at approximately 3:28 p.m.*

*Witzemann's FBI Interview*

To his credit, on January 15, 2021, several months before any formal charges were filed against him, Witzemann voluntarily agreed to an interview with the FBI.  Witzemann claimed to work as an independent journalist, running a media company called Tribune Media International. He stated that he often travels to demonstrations and protests to livestream video from the events. Although he claimed to remain independent from the groups he has recorded, he admitted that his own views often coincide with those groups.  For example, he denied being associated with the Proud Boys or other "Patriot" groups, but he did admit to being sympathetic to their cause.

Witzemann stated that both Enrique Tarrio and Joe Biggs, well-known Proud Boys,[2] know him from his coverage of Proud Boys events.

According to Witzemann, on December 12, 2020, he was in Washington, D.C. to record Proud Boys protests.  During these protests, he observed violence between "Patriot" groups and other groups he believed to be Black Lives Matter or Antifa.  Witzemann stated that he would livestream his videos from these types of events on Facebook until Facebook prevented him from doing so.  He claimed Facebook blocked him from doing this because he once posted a flier that set forth the tenets of the Proud Boys.  Witzemann believes the Proud Boys are mischaracterized by the media.

With respect to January 6, 2021, Witzemann admitted to entering the Capitol Building.  He stated that he attended the rally for then-President Trump that morning but was too far away to hear anything.  At approximately 1:00 p.m., he began walking towards the Capitol Building.  He acknowledged that by the time he got to the building, he saw that a large crowd of protestors had gathered outside and pushed their way towards the steps.  He observed Capitol Police firing what appeared to be tear gas at the protestors.  He claimed that as a group of protestors pushed towards a door, it appeared as though the police had stood down.  Witzemann stated that he climbed a scaffolding to get a better view with his cell phone but got down after a police officer instructed him to do so.

Witzemann recalled the events in the Rotunda described above.  He recounted being stuck between a group of rioters pushing towards the police and the police pushing back towards the

---

[2] Both Enrique Tarrio and Joseph Biggs held leadership roles in the Proud Boys and have since been charged with various crimes, including seditious conspiracy, conspiracy to obstruct an official proceeding, and assaulting, resisting, or impeding certain officers, in connection with the Capitol attack on January 6, 2021.  *See United States v. Nordean, et al.*, Crim. No. 21-cr-175 (TJK) (ECF No. 380).

rioters.  He stated he feared for his life and was concerned that if he fell to the ground, he might

get trampled.  Witzemann recalled exiting the Capitol Building and returning to his hotel room.

*Post-January 6th and Social Media Statements*

On January 6, 2021, after Witzemann left the Capitol area and returned to his hotel room,

he appeared on an Internet radio show to discuss what he observed at the Capitol.  (The video is

available here: https://fb.watch/dlnrxi_wJh/).  During the interview Witzemann stated that then-

President Trump needed "to invoke the Insurrection Act . . . Now more than ever."  He told the

interviewer that while inside the Capitol, "I screamed at the cops in the Capitol.  And I said, 'Don't

you realize . . . if they take over, it could be 100 years before the lights come back on.' . . .  The

police officer, he looked at me and said, 'I know.'"

Later that evening, Witzemann appeared in another video webcast, which will be filed with

the Court as Government Video Exhibit 2.  This one was posted on the Facebook page of The

Armenian Council for Truth in Journalism.  Before Witzemann appeared, the other participants

started the webcast by showing some of the video Witzemann record in the Rotunda that day.  As

shown in Image 13, below, when Witzemann first appeared, he started by saying, "Let's just get

this right out of the way," and flaunted his shirt, which read, "Enrique Tarrio Did Nothing Wrong!"



Image 13: *Witzemann appearing on a Facebook livestream on the evening of January 6, 2021.*

13

Witzemann appeared clearly agitated by the events of January 6, 2021.  He expressed anger towards a politician who spoke out against the riot:

> These fucking cocksuckers.  So then when they resume their activities up there, there's this fucking guy, and I don't even know his name.  I tuned in for a couple of minutes, and he's got this fucking smirk on his face about it.  And he's lecturing us about morality, and what it means to be an American, and all this other bullshit, while he was hiding in a fucking tunnel underneath the Capitol.

Video Exhibit 2, at 9:42.  As they played the video Witzemann recorded in the Rotunda, Witzemann continued to spread false information about the election:  "They stole the election! Let's just clarify that right now.  How much more evidence do you need to see?"  Video Exhibit 2, at 12:57.

Witzemann also falsely claimed during the webcast that "[t]here was no vandalism," Video Exhibit 2, at 16:50, even though he entered through the Senate Wing Doors, where the doors had been breached and the windows had been smashed open by the rioters.  Witzemann also cryptically stated, "There were so many times when I wanted to do something besides film."  Video Exhibit 2, at 19:14.

As Witzemann's cell phone video continued to play on the webcast, Witzemann continued to provide commentary as to what he saw that day.  He acknowledged with respect those police officers that nodded at him as he was exiting the Capitol Building but made disparaging comments about those officers that did not nod towards him.  *See* Video Exhibit 2, at 19:55 ("Ninety percent of them would give you a nod. . . .  This guy doesn't.  This guy wants to be a dick, and he could fuck off, that fucking fat pig fuck.").

In the weeks and months following January 6, 2021, Witzemann continued to take to social media to express his support for the actions of the rioters and show a lack of remorse for his own

actions that day.  On March 6, 2021, he stated that he "still think[s] [the election] was fraudulent."

And on August 30, 2021, he stated the following:

> On January 6th, I witnessed as hundreds of thousands of Americans went to the Capitol to protest the stolen election.  I saw years of disillusionment and steady gaslighting come to a head that day, as protestors moved up the stairs on the west side of the inauguration stage.  I inhaled tear gas as it was shot into the crowd.
>
> . . . .
>
> The following week, the FBI came knocking at my door.  I agreed to meet with them, to discuss what I had seen.  I had nothing to hide.  Journalism is a public business.
>
> Later that month, I watched as Biden was installed
> I watched as the lie unfolded.
>
> On April 1st of this year (a fitting date for this old fool), I too was charged with crimes I did not commit.  I was contacted by the FBI and instructed to turn myself in.

Witzemann's entire statement is available at:

https://blogs.relativeprogress.com/2021/08/30/remarks-from-shawn-witzemann-at-reclaim-restore-county-by-county-event/.

*The Charges and Plea Agreement*

On April 1, 2021, the United States charged Witzemann by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104 (e)(2)(D) and (G).  On April 6, 2021, law enforcement officers arrested him in New Mexico. On May 16, 2022, the United States charged Witzemann by a four-count Superseding Information with violating: (1) in Count One, 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); (2) in Count Two, 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds; (3) in Count Three, 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and (4) in Count Four, 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or

Picketing in a Capitol Building).  On July 21, 2022, pursuant to a plea agreement, Witzemann pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).  By plea agreement, Witzemann agreed to pay $500 in restitution to the Department of the Treasury.

### III.    Statutory Penalties

Witzemann now faces a sentencing on a single count of violating 40 U.S.C. § § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, Witzemann faces up to six months of imprisonment and a fine of up to $5,000. Witzemann must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' imprisonment, 36 months' probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 was a crime unparalleled in American history and defies comparison to other violent riots. It represented a grave threat to our democratic norms and practices. Indeed, it was one of the only times in our history when the building was literally occupied by hostile participants.

While each defendant must be sentenced based on their own conduct, this Court should take into account that each person who entered the Capitol on January 6 without authorization did so under extreme circumstances. As they entered the Capitol, they very likely crossed through numerous barriers and barricades and heard the violent outcries of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting between the rioters and police and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while assessing Witzemann's individual conduct and fashioning a just sentence, this Court should look to a number of critical aggravating and mitigating factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive, they help to place each defendant on a spectrum as to their fair and just punishment. Had Witzemann personally engaged in violence or destruction, he would be facing additional

charges and/or penalties associated with that conduct. The absence of violent or destructive acts on Witzemann's part is therefore not a mitigating factor in misdemeanor cases.

Witzemann entered the Capitol Building a mere six minutes after the initial breach at the Senate Wing Door. While no police officers blocked his path into the building, there were clear signs of violent entry. Indeed, he acknowledged to the FBI that he observed officers firing tear gas at the rioters that were approaching the Capitol Building before he entered. Additionally, the window adjacent to the door through which Witzemann passed had just been smashed out and Witzemann would have walked directly by a pile of shattered glass on the ground and heard alarms as he moved into the Capitol Building. Witzemann did eventually encounter police officers blocking rioters from moving further down a hallway. Rather than retreat, Witzemann attempted to persuade the officers to let them through by stating, "Stand with us." Witzemann was then part of a large crowd that overwhelmed the Rotunda. While there is no evidence that he pushed any officers, his presence alone in the mob created an overwhelming and unmanageable situation for those officers. It took many officers in riot gear to completely clear the mob in the Rotunda, of which Witzemann was a part. Witzemann was inside the Capitol Building for approximately one hour and twenty minutes, a long time relative to the time that most of the rioters spent inside the building.

Perhaps most troubling are the statements Witzemann made on the evening of January 6, 2021, and the weeks and months after. Witzemann immediately took to social media to portray the events of that day as a peaceful protest with "no vandalism," despite the clear signs of violence and property destruction that he observed. He mocked a Congressperson who was forced to hide in the Capitol's tunnels and disparaged police officers who did not acknowledge him as he was

exiting the building.  Months after January 6, 2021, Witzemann continued to use social media to promote his belief that the election was stolen and justify the actions of himself and the rioters.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days' imprisonment and 36 months' probation in this matter.

### B.  The History and Characteristics of Witzemann

While Witzemann does not have any criminal history points, the presentence report ("PSR") shows that this matter is not his first encounter with the criminal justice system.  In June 2004, Witzemann was sentenced to 364 days' imprisonment (suspended) and 544 days' probation for resisting, evading, and obstructing an officer.  PSR ¶ 28.  Additional charges of aggravated assault upon a peace officer and assault against a household member were dismissed.  *Id.*  In April 2012, Witzemann was arrested for battery, but that charge was subsequently dismissed.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. This Court made that very point during the sentencing hearing of another January 6 defendant. "As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

our democracy and that jail time is usually -- should be expected." *United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [[Defendant Last Name]] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy.

It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Witzemann's conduct on January 6, 2021, and his statements following the attack on the Capitol demonstrate the need for specific deterrence. Witzemann sympathized with the Proud Boys and others protesting against the lawful 2020 election. Despite the police's attempts to tear gas approaching rioters, Witzemann persisted and entered the Capitol Building a mere six minutes after the initial breach. He tried to persuade police to join the side of the rioters and made insulting comments about the officers that appeared to disapprove of the rioters conduct. Witzemann provided a truthful statement to the FBI, but in that statement acknowledged his sympathy for the Proud Boys movement and seemed to justify his presence in the Capitol Building by asserting his position as a journalist. In the months after January 6, 2021, he continued to promote his belief that the election was stolen and, as recently as August 2021, he described the events of January 6, 2021 a "caricature of the truth" and believes that "hundreds" have been "rounded up and charged with crimes they did not commit."

**E.  The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Witzemann based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot. Although those like Witzemann convicted of misdemeanors are generally less culpable than defendants convicted of felonies, misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not be the default.[5]  *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth at sentencing). Accord, *United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (statement of Judge Friedman).

Witzemann has pleaded guilty to Count Four of the Superseding Information, charging him with violating 40 U.S.C. § 5104(e)(2)(G).  This offense is a Class B misdemeanor. 18 U.S.C.

---

[4] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

§ 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. Avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch

23

of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against police officers, and large number of victims. Thus, even though many of defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

This Court and others have imposed incarceration where January 6 defendants have expressed an interest in or support for extremist groups such as the Proud Boys. *See United States v. Annie Howell*, 21-cr-217 (this Court imposed 60 days of intermittent confinement where the defendant was convicted of violating 18 U.S.C. § 1752(a)(1) and expressed an interest in meeting the Proud Boys); *United States v. Blake Reed*, 21-cr-204 (Chief Judge Howell imposed 42 days of intermittent confinement where defendant was convicted of violating § 1752(a)(1) and expressed an interest in meeting the Proud Boys); *United States v. Richard Watrous*, 21-cr-627 (Chief Judge Howell imposed 14 days of intermittent confinement where the defendant was convicted of violating 40 U.S.C. § 5104(e)(2)(G) and emailed the Proud Boys, expressing an interest in joining that organization); *United States v. Andrew Galloway*, 22-cr-12 (Judge Cooper imposed 30 days of incarceration where defendant was convicted of violating § 5104(e)(2)(G) and followed social media posts of the Proud Boys); *United States v. Cory Brannan*, 21-cr-637 (Judge Chutkan imposed 30 days of incarceration where defendant was convicted of violating § 5104(e)(2)(G) and wore a Three Percenters patch on January 6).

This Court and others have also imposed incarceration for defendants who have expressed support for the riot on social media. *See Annie Howell*, *supra* (defendant made statements on social media during and after the riot that displayed a lack of remorse, including falsely blaming the law enforcement officers for the violence on January 6).

The government's recommendation here would not create an unwarranted disparity with other sentences imposed on similarly situated January 6 defendants. In *United States v. Lawrence Dropkin*, 21-cr-734 (JEB), Judge Boasberg sentenced the defendant to 30 days' imprisonment. Dropkin, like Witzemann, entered through the Senate Wing Door just minutes after the initial breach, paraded through the Capitol Building for an hour, and was part of the mob in the Rotunda that riot police had to contain and remove.

In *United States v. Joshua Wagner*, 21-cr-310 (ABJ), the defendant entered through a broken window, called the police traitors, and encouraged other rioters to "hold the line" against the police.  Judge Berman Jackson sentenced Wagner to 30 days' imprisonment.

In *United States v. Jeremy Sorvisto*, 21-cr-320 (ABJ), the defendant entered through the Senate Wing Doors, as did Witzemann, and remained inside the Capitol Building for approximately 25 minutes. The court sentenced the defendant to 30 days' imprisonment.  Although this defendant was in the Capitol Building for approximately one-third the time as Witzemann, Sorvisto had other aggravating factors, including lack of remorse and destruction of evidence, that warranted the 30-day sentence.  *See also United States v. Clifford Meteer*, 21-cr-630 (CJN) (60 days' imprisonment for defendant who followed mob that overran police, remained in Capitol for 30 minutes, and made statements on Facebook and television showing lack of remorse).

Again, while Witzemann's conduct is not identical to any of the above-mentioned defendants, the combination of factors, including method and time of entry into the Capitol

Building, the amount of time he spent in the Capitol Building, and the seriousness of his conduct while inside the Capitol Building, suggest that a sentence of 30 days' incarceration would be sufficient to avoid unwarranted sentencing disparities with other defendants who were similarly situated.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**V.    This Court's Authority to Impose a Split Sentence Under 18 U.S.C. § 3561(a)(3) or a Sentence of Up to 14 Days of Imprisonment as a Condition of Probation Under 18 U.S.C. § 3563(b)(10).**

As eight judges of this District have now concluded, this Court has the authority under 18 U.S.C. § 3561(a)(3) to impose a "split sentence," *i.e.*, a sentence requiring both a term of imprisonment and a term of probation, on a defendant who has been convicted of a "petty offense." *See, e.g.*, *United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case), *appeal pending*, D.C. Circuit No. 22-3018; *United States v. Sarko*, No. 21cr591 (CKK),

2022 WL 1288435, at *1 (D.D.C. Apr. 29, 2022) (explaining why a split sentence is permissible in a petty offense case); *United States v. Caplinger*, No. 21-cr-342 (PLF), 2022 WL 2045373, at *1 (D.D.C. June 7, 2022) ("the Court concludes that a split sentence is permissible for a petty offense and therefore is an option for the Court in Mr. Caplinger's case."); *United States v. Smith*, 21-cr-290 (RBW), ECF 43 (D.D.C. Mar. 15, 2022) (imposing split sentence); *United States v. Meteer*, 21-cr-630 (CJN), ECF 37 (D.D.C. April 22, 2022) (same); *United States v. Entrekin*, 21-cr-686 (FYP), ECF 34 (D.D.C. May 6, 2022) (same); *United States v. Revlett*, 21-cr-281 (JEB), ECF 46 (D.D.C. July 7, 2022) (same); *United States v. Getsinger*, 21-cr-607 (EGS), ECF 60 (D.D.C. July 12, 2022) (same); *United States v. Ticas*, 21-cr-601 (JDB), ECF 40 (D.D.C. July 15, 2022) (same); *United States v. Caplinger*, 21-cr-342 (PLF), ECF 74 (D.D.C. August 1, 2022) (same).[6] This Court should follow suit and sentence Witzemann to 30 days' incarceration followed by 36 months of probation.

But this Court need not decide that question in this case because there is no dispute that such a defendant can be required to "remain in the custody of the Bureau of Prisons during nights, weekends, *or other intervals of time*, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release." 18 U.S.C. § 3563(b)(10) (emphasis added).  Congress enacted this provision to give sentencing courts "flexibility" to impose incarceration imprisonment as a condition of probation in one of two ways.  S. Rep. No. 225, 1983 WL 25404, at *98.  First, a court can direct that a

---

[6] In *United States v. Lindsey*, 21-cr-162 (BAH), ECF 102, the defendant pleaded guilty to three counts: 18 U.S.C. § 1752(a)(1); 40 U.S.C. §§  5104(e)(2)(D) and 5104(e)(2)(G). Chief Judge Howell sentenced Lindsey to five months incarceration on each of the § 5104 counts, to be served concurrently, and 36 months' probation on the § 1752(a)(1) count.

defendant be confined in "split intervals" over weekends or at night. *Id.* Second, a sentencing court can impose "a brief period of confinement" such as "for a week or two." *Id.*

Although the statute does not define an "interval of time," case law suggests that it should amount to a "brief period" of no more than a "week or two" at a time. *See United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, *e.g.*, for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation); *accord United States v. Baca*, No. 11-1, 2011 WL 1045104, at *2 (C.D. Cal. Mar. 18, 2011) (concluding that two 45-day periods of continuous incarceration as a condition of probation was inconsistent with Section 3563(b)(10)); *see also United States v. Anderson*, 787 F. Supp. 537, 538 (D. Md. 1992) (continuous 60-day incarceration not appropriate as a condition of probation). A 14-day term of imprisonment is therefore permissible under Section 3563(b)(10). S*ee United States v. Stenz*, 21-cr-456 (BAH) ECF 38 (D.D.C. Feb. 17, 2022) (imposing imprisonment under Section 3563(b)(10); *United States v. Schornak*, 21-cr-278 (BAH) ECF 71 (D.D.C. Feb. 18. 2022) (same); *United States v. Herendeen*, 21-cr-278 (BAH) ECF 87 (D.D.C. Apr. 1, 2022) (same); *United States v. McCreary*, 21-cr-125 (BAH) ECF 46 (D.D.C. Apr. 1, 2022) (same); *United States v. Reed*, 21-cr-204 (BAH) ECF 178 (D.D.C. Apr. 14, 2022) (same); *United States v. Watrous*, 21-cr-627 (BAH) ECF 40 (D.D.C. Apr. 21, 2022) (same); *United States v. Vuksanaj*, 21-cr-620 (BAH) ECF D.D.C. Apr. 29, 2022) (43 (same); *United States v. Heinl*, 21-cr-370 (EGS) ECF 43 (D.D.C. June 8, 2022) ECF 43 (same); *United States v. Cameron*, 22-cr-00017 (TFH) ECF 36 (D.D.C. Aug. 17, 2022) (same).

No court appears to have decided whether a term of continuous imprisonment greater than two weeks but less than 30 days is consistent with Section 3563(b)(10), and the government does

not advocate such a sentence here. Practical concerns with multiple short terms of intermittent confinement (i.e., nights and weekends in jail), which would require repeated entries and departures from a detention facility during the COVID-19 pandemic, thereby increasing the risk of spreading contagion in the facility, may militate against imposing this type of "intermittent" confinement.  For that reason, any 14-day term of imprisonment imposed as a condition of probation under Section 3563(b)(10) should be ordered to be served without interruption.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days' imprisonment, 36 months' probation, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     *s/ Christopher D. Amore*
CHRISTOPHER D. AMORE
Assistant United States Attorney
Capitol Breach Detailee
N.Y. Bar No. 5032883
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 645-2757
Christopher.Amore@usdoj.gov

## CERTIFICATE OF SERVICE

On this 28th day of October, 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*s/ Christopher D. Amore*
CHRISTOPHER D. AMORE
Assistant United States Attorney
Capitol Breach Detailee
N.Y. Bar No. 5032883
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 645-2757
Christopher.Amore@usdoj.gov